FREDERICK CONRAD, administrator, &c.,

*v.*

CHARLES A. CONRAD et ux.

[Decided August 17th, 1912.]

On a bill for an accounting charging that the defendants took advantage of the mental weakness of a great uncle, who was living with them, to obtain considerable sums of money (either the proceeds of real estate or other money) for which they are bound to account, evidence examined and *held*, insufficient to establish either fraud or incompetency, no fraud being shown, at farthest, a money demand, recoverable at law, the bill should be dismissed.

---

*Mr. George H. Peirce,* for the complainant.

*Mr. Alan H. Strong,* for the defendants.

STEVENS, V. C.

This is a bill for an accounting. The charge is that the defendants, Charles A. Conrad and his wife, took advantage of the mental weakness of Charles Conrad, a great uncle, who was liv-

ing with them, to obtain considerable sums of money (either the proceeds of the sale of real estate or other money) for which they are bound to account.

In addition to what was said on the argument, I will very briefly indicate why I think this bill should be dismissed. The specific charges made, viz., those relating to the sale of real estate, have no evidence to support them. There are, however, general charges to the effect that defendants received other moneys drawn from banks and it is prayed that they may account for them.

On defendants' examination it appeared that deceased had a savings bank account in the Mutual Savings Fund Harmonia of Elizabeth. Charles A. Conrad admitted that at the request of his uncle he drew out various sums of money, and in particular $900 in June, 1906, and $1,000 in September, 1907. He says that he paid over the money thus drawn to his uncle. It is proved by an officer of the bank that he had express authority to sign his uncle's name to the drafts, and there is no direct evidence that the money when drawn was appropriated by defendants.

As to the $900 the complainant's evidence is that Charles A. Conrad received the money and gave $200 to Henry Conrad, by his uncle's order, and that his uncle informed Henry, when Henry a year afterwards repaid what he had borrowed, that Charles A. Conrad had drawn $700 (presumably as a loan).

As to the $1,000, the complainant's evidence is that the nephew deposited the money in his own bank account and that it appears from a transcript of that account that his statement on the witness-stand that he drew a check upon his individual account for $500, within a few days after he made the deposit; that he cashed it, and that he gave the money to his uncle, does not accord with the facts.

The bill, as I have said, made no specific charges as to the money. The defendant's attention was, for the first time, directed to them when, without any writing to aid his memory, he was compelled to testify to the details of transactions that had occurred five or six years previously. His manner of testifying was unfortunate, but it is not surprising that his memory was at

fault. He is a plumber in the growing town of Carteret. His bank account shows that his business was considerable, and that he was at the time the moneys were drawn under no apparent stress for funds. I am asked to find, on the strength only of inaccurate statements made with too much positiveness, that he deliberately perpetrated a fraud for which he would have been criminally liable, upon an uncle who had already given him property in return for his engagement to take care of him for the rest of his life, and this for no motive except the desire for illicit gain. I am unwilling, on the slender proofs offered, to make such a finding.

Charles Conrad died in December, 1909, at the age of eighty-four or eighty-five. Some time after his wife's death, and about the year 1900, he went to live with defendants, with whom he remained until May, 1908, after which he went, first, to two nieces, and then to his nephew, Frederick. These and other members of the family are manifestly hostile to defendants. In the fall of 1908 a lunacy commission issued, and in December of that year he was found a lunatic. The finding was, further, that he had been such for five or six years previously. The latter part of this finding is manifestly based on inadequate evidence. The defendants were not called as witnesses and did not even know that the inquiry was proceeding. It is completely disproved, at least, as to the time prior to 1908. While physically infirm, he was not mentally incompetent.

I do not think the evidence sustains the charge in the bill that defendants obtained Charles Conrad's money by taking advantage of his lunacy and advanced age. It may be that there is some money, for instance, the $75 for painting, owing by Charles A. Conrad to complainant, recoverable in an action for money had and received. While the defendants' evidence might have been more satisfactory, I do not think that either fraud or incompetency has been proved. There is present, consequently, no equitable feature. The bill should be dismissed without prejudice and without costs.